herein paragraphs 1-152 of this Complaint and they are hereby Realleged and incorporated by reference.

157.  In the Consent Order, Paragraph 5 excerpt states, "If Defendant defaults upon any of her obligations under this Consent Order as described herein, Plaintiff has the authority, pursuant to the Declaration of Condominium for Freedom Lofts Condominium,  to  divest  Defendant  of  the  aforementioned privileges, including but not limited to, voting rights."

158. Plaintiff asks the Court to declare whether Paragraphs Five should be construed to give Defendants the authority to effectively declare Plaintiff's fee simple interest in her Parking Spaces Number 283 and 311 null and void to allow Defendants to tow Plaintiff's vehicles from her property at will.

159. Depending on whether the Court finds Defendants had no contractual rights or rights under law to tow Plaintiff's vehicle from her property at Unit 3207, declare Defendants' towing of Plaintiff's vehicle to be an unlawful taking of property.

#### COUNT 10

#### PRELIMINARY AND PERMANENT INJUNCTION

160. Plaintiff hereby incorporates as if set forth fully herein paragraphs 1-156 of this Complaint and they are hereby

realleged and incorporated by reference.

161. Plaintiff will suffer irreparable injury if Defendants are not enjoined during the pendency of this lawsuit, and thereafter, from depriving Plaintiff of the use of her property as identified in her Deed as Unit 3207 and from the harassing, intimidating, and unlawful towing of Plaintiff's vehicles from her property at Unit 3207. Plaintiff's injury is imminent and continuing and irreparable as Defendants have informed Plaintiff that they intend to tow Plaintiff's vehicle from her property any time they see it parked at Unit 3207, thereby permanently taking away Plaintiff's legal property and continuing a pattern of harassment, retaliation, intimidation, and intentional infliction of emotional distress on Plaintiff.

162. There is a substantial likelihood that Plaintiff will prevail on the merits because the Purchase Agreement survives the Closing of April 2003 and her fee simple interest in the Parking Spaces to her Unit 3207 are part of her Deed and recorded in the appropriate legal records in Fulton County, Georgia.

163. The harm faced by Plaintiff outweighs the harm that would be sustained by the Defendants if the preliminary injunction were granted. Defendants are attempting to collect alleged debts that are to be paid in money if due versus the

45

lost of Plaintiff's use of her property and continuing towing of her vehicle and continuing intentional infliction of emotion distress on Plaintiff.

164. Issuance of a preliminary and permanent injunction would not adversely affect the public interest. To the contrary, the public interest will be served in that other Unit owners should benefit by Defendants' informed understanding of their rights and duties under the Purchase Agreement, Declaration and By-Laws, and other law that protect fee simple property interests in the Parking Spaces such as those the subject of this lawsuit.

165. Plaintiff asks the Court to set her application for preliminary injunction for hearing at the earliest possible time and, after hearing the request, to issue a preliminary injunction against Defendants.

166. Plaintiff further asks the Court to set her application for injunctive relief for a full trial on the issues in this application and, after the trial, to issue a permanent injunction against Defendants.

167. Without an injunction, Plaintiff is in fear of using her own property, the parking spaces, for which she bargained for and seller agreed to place into Purchase Agreement Parking Spaces 283 and 311 for her exclusive use as part of her fee

46

simple interest in Unit 3207; Plaintiff is further in fear of having warning stickers placed on her vehicle and it being towed again without her knowledge; Plaintiff is further in fear of continuing to park her vehicle on the street where it already has been broken into and vandalized December 25, 2007; and lastly, Plaintiff seeks relief from the continuing emotional distress caused by Defendants' harassing and retaliatory acts toward her because she exercised her rights as a Unit Owner to request Defendants to correct their billing and statement errors on her account.

## COUNT 11

### FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C.A. § 1692g ("FDCPA") AND OTHER LAW

168. Plaintiff hereby incorporates as if set forth fully herein paragraphs 1-164 of this Complaint and they are hereby realleged and incorporated by reference.

169. Plaintiff is a natural person who is harmed by violations of the FDCPA, and/or a "consumer" within the meaning of the FDCPA;

170. The alleged debt arises out of a transaction entered primarily for personal, family, or household purposes;

171. The Defendants collecting the debt are a "debt collector" within the meaning of 15 U.S.C.A. § 1692a(6); and

172. The Defendants have violated, by act or omission, a provision of the FDCPA as follows:

173. Defendants received a valid notice from Plaintiff in writing within the thirty-day period that the alleged debt, or any portion thereof, is disputed when first notified of the alleged debt in April 2003.

174. Defendants failed to provide Plaintiff with a correction of their errors and the alleged verification of the alleged debt was based on prior errors and Plaintiff continued to notify Defendants of her continuing dispute and requested an accurate accounting of her funds paid in April 2003 and thereafter.

175. Defendants failed to cease their collection of the disputed debt, in violation of the Fair Debt Collections Practices Act and other law.

176. Defendants then instituted harassing and retaliatory collection practices that were not otherwise protected by law to collect the disputed debt, in violation of the Fair Debt Collections Practices Act.

177. Defendants used, and continue to use, false, deceptive, or misleading representation or means in connection with the collection of the alleged debt.

178. Defendants have given, and continue to give, the false representation of:

(a) The character, amount, or legal status of the alleged debt;

(b) Any services rendered or compensation which may be lawfully received by Defendants for the collection of the alleged debt;

(c) The representation or implication that nonpayment of the alleged debt will result in the seizure of her vehicles and/or sale and/or taking and/or the use of her property in the fee simple interest in Unit 3207 Parking Spaces Number 283 and 311;

(d) The threat to take any action that cannot legally be taken or that is not intended to be taken, to wit: the seizure of her vehicles and/or reassignment of her Property Parking Spaces Numbers 283 and 311 and/or taking the use of her property from her Parking Spaces Number 283 and 311 to Unit 3207;

179. Defendants used unfair or unconscionable means to collect or attempt to collect the alleged debt:

(a) To collect an alleged amount, including any

49

interest, fee, charge, or expense incidental to the principal obligation, that is not expressly authorized by the agreement creating the alleged debt or permitted by law;

(b) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of Plaintiff's property interest in Parking Spaces Number 283 and 311 to Unit 3207 when there is no present right to possession of the property under contract or law.

180. As a result of Defendants unlawful conduct, Plaintiff has suffered, and continue to suffer, economic and nonecomonic damages.

## COUNT 12
## CONVERSION OF PROPERTY: STATE LAW

181. Plaintiff hereby incorporates as if set forth fully herein paragraphs 1-177 of this Complaint and they are hereby realleged and incorporated by reference.

182. On or about October 2007, Defendants towed Plaintiff's vehicle from her property at Unit 3207;

183. Defendants were unauthorized to tow Plaintiff's vehicle and there acts were a denial of Plaintiff's property rights and inconsistent with her rights;

184. By their acts, Defendants exercised an unauthorized assumption and exercise of the right of ownership over personal

property belonging to Plaintiff, which was contrary to the Plaintiff's rights.

185. As a result of Defendants' unlawful conduct, Plaintiff has suffered, and continue to suffer, both economic and noneconomic damages.

### COUNT 13

### VIOLATIONS OF GA. CODE ANN., § 44-3-106

186. Plaintiff hereby incorporates as if set forth fully herein paragraphs 1-182 of this Complaint and they are hereby realleged and incorporated by reference.

187. Defendant Association failed keep detailed and accurate financial records, including itemized records of all receipts and expenditures with respect to outstanding assessments, interests, late fees, intent to lien attributable to seller of Unit 3207 as of April 2003, as required by law.

188. As a result of Defendant's intentional conduct, Plaintiff has suffered, and continues to suffer, both economic and noneconomic damages.

### COUNT 14

### BREACH OF CONTRACT/§1981

189. Plaintiff hereby incorporates as if set forth fully herein paragraphs 1-185 of this Complaint and they are hereby

realleged and incorporated by reference.

190. In April 2003, Plaintiff, an African American, entered a valid Purchase Agreement with Defendant Freedom Parkway Apartments, L.L.C. for the purchase of a fee simple interest in Unit 3207 in exchange for valuable consideration;

191. Defendant Freedom Parkway Apartments, L.L.L. warranted the accuracy of its information at Closing concerning any encumbrances, outstanding assessments, late fees, and any other charges pertaining to Unit 3207;

192. Upon Plaintiff moving into Unit 3207 in April 2003, Plaintiff began receiving statements for outstanding assessments, interest, late fees and other related charges;

193. Plaintiff duly notified Defendants, individually and/or collectively of their errors in attempting to collect money not owed by Plaintiff; however Defendants refused to correct their errors;

194. As a result of Defendant Freedom Parkway Apartments warranting no encumbrances, interest, late fees, and other charges, and Plaintiff having been billed repeatedly for said encumbrances, interest, late fees, and other charges, Defendant is breach of the Purchase Agreement signed on April 2003 and survive the Closing into the present.

195. Plaintiff believes Defendants treated her differently

52

than similarly situated white unit owners in the enforcement of terms, conditions, benefits, privileges and other rights accorded under applicable contracts and law.

196 As a result of Defendants breach of contract and law, Plaintiff has incurred additional debt, interest charges, late fees, intent to lien fees, and attorney's fees, and other related damages.

### COUNT 15

### TORTIOUS INFERENCE WITH CONTRACT

197. Plaintiff hereby incorporates as if set forth fully herein paragraphs 1-192 of this Complaint and they are hereby realleged and incorporated by reference.

198. Defendants Freedom Lofts Condominium Association, Inc., Weinstock & Scavo, P.C., Michael J. Zenner and Elizabeth A. Frey, Scot Golden, and Michael B. Jenniges all tortiously interfered with Plaintiff's contract with Defendant Freedom Parkway Apartments causing Plaintiff to lose the benefit of her bargain for her fee simple interest in Parking Spaces Numbers 283 and 311 and causing Plaintiff to pay fines, intent to lien fees, interest, late fees, attorney's fees, and other related charges, including both economic and noneconomic damages.

### COUNT 16

### 1985(3) CONSPIRACY TO VIOLATE FEDERAL RIGHTS UNDER FAIR DEBT COLLECTIONS PRACTICES ACT AND UNDER OTHER LAW

199. Plaintiff hereby incorporates as if set forth fully herein paragraphs 1-194 of this Complaint and they are hereby realleged and incorporated by reference.

200. On or about July 11, 2006, Defendants, individually and in concert with each other, met, conspired, and devised a scheme to coerce collections of delinquent Association dues.

201. Instead of using normal customary collections procedures, Defendants conspired to institute the coercive practice of towing Unit owners' vehicles in an effort to intimidate, create financial harm, and to inflict great emotional distress.

202. On or about October 18, 2007, Defendants prevailed in State Court on Plaintiff's motion to set aside the Consent Order and the court granted Defendant's motion for judgment for an amount greater than $3,000.00.

203. Plaintiff timely filed within ten days following the State Court's decision her certificate for immediate review and her motion for reconsideration in an effort to challenge the State Court's decision denying her motion and granting Defendants additional money under the Consent Order, which

Plaintiff believed had been paid in full as of April 2007.

204. However, within a few days after the State Court's decision, Defendants, individually and in concert with each other, without any prior notice to Plaintiff, met, conspired, motivated by racial or other class-based invidious discrimination, to have Plaintiff's vehicle towed from her property at Unit 3207, causing Plaintiff immediate fear and great emotional distress and harm upon believing her vehicle had been stolen from her property and that her safety had been compromised, and causing other related damages, for the purpose of depriving directly or indirectly Plaintiff of equal protection of the laws of equal privileges and immunities under the laws.

205. The towing of Plaintiff's vehicle constituted some act committed in furtherance of the conspiracy; and

206. An injury to the plaintiff's person and/or property occurred and/or a deprivation of her rights or privileges of a United States citizen not to be deprived of her property without due process of law and other related damages.

## COUNT 17
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

207. Plaintiff hereby incorporates as if set forth fully herein paragraphs 1-202 of this Complaint and they are hereby

55

realleged and incorporated by reference.

208. Defendants without rights under contract or law towed Plaintiff's vehicle from her property at Unit 3207 and without any prior notice to Plaintiff;

209. Defendants knew or should have known that their conduct was intentionally calculated to cause harm, and/or reckless, to create fear in Plaintiff that would have her believe she had been the victim of a crime, causing her to experience severe emotional distress, and other related damages.

### PRAYER

WHEREFORE, Plaintiff demands judgment against Defendants for statutory damages, actual and compensatory damages, punitive damages, attorney's fees and costs and other such relief as this Court deems just and equitable, including but not limited to:

a) Declare the rights of the parties with respect to the Purchase Agreement, Declaration, Consent Order and other related documents;

b) Preliminary and permanent injunction to prevent Defendants from depriving Plaintiff of vehicular ingress and egress from her Unit 3207;

c) award Plaintiff compensatory and general damages for the violation of her statutory federal rights and for the damages she has sustained under Georgia law in an amount to be

56

determined by the enlightened conscience of the jury, including damages for loss of income, emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other damages under law;

d) award Plaintiff punitive damages for the unlawful intentional discrimination against her and to deter the conduct of Defendants pursuant to federal law;

e) award Plaintiff costs of this action and her reasonable attorney's fees under federal and state law including interim and final attorney's fees; and,

f) award Plaintiff such further relief, equitable or legal, that this Court may deem just and proper.

Respectfully submitted February 8, 2008,

SHEPPARD & ASSOCIATES

SANDRA JACKSON SHEPPARD
Georgia Bar No. 641967
455 Park Avenue, S.E.
Atlanta, Georgia 30312
(404) 622-5777
(404) 622-5577 Fax
E-mail: sheppardatty@bellsouth.net

## FREEDOM HEIGHTS AT FREEDOM LOFTS
## CONDOMINIUM PURCHASE AGREEMENT

THIS AGREEMENT, made and entered into this 27th day of March, 2003, by and between FREEDOM PARKWAY APARTMENTS, L.L.C., a Georgia limited partnership (hereinafter called "Seller"), and Teela Spiller (hereinafter called the "Purchaser").

ORAL REPRESENTATIONS CANNOT BE RELIED UPON AS CORRECTLY STATING THE REPRESENTATIONS OF SELLER. FOR CORRECT REPRESENTATIONS, REFERENCE SHOULD BE MADE TO THIS CONTRACT AND THE DOCUMENTS REQUIRED BY CODE SECTION 44-3-111 OF THE GEORGIA CONDOMINIUM ACT TO BE FURNISHED BY A SELLER TO A PURCHASER. THIS CONTRACT APPLIES TO A CONDOMINIUM UNIT WHICH IS PART OF A CONVERSION CONDOMINIUM.

In consideration of the purchase price specified below, the mutual covenants and benefits provided for herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the parties hereto, the parties hereto do hereby agree as follows:

1. GENERAL. Seller agrees to sell, and Purchaser agrees to purchase, in accordance with the terms and conditions of this Agreement, Unit 3207 of Freedom Lofts Condominium, Phase 3, a condominium development located at 821 Ralph McGill Boulevard, NE, Atlanta, Georgia 30306, in Land Lot 18 of the 14th District of Fulton County, Georgia, with the property description of the Condominium attached hereto and incorporated herein as Exhibit "A" and the floor plan of such Unit attached hereto and incorporated herein as Exhibit "B." The Condominium was or shall be created pursuant to the Declaration of Condominium for Freedom Lofts Condominium, as amended ("Declaration"), which was or shall be recorded with the Clerk of the Superior Court of Fulton County, Georgia, prior to the closing of the purchase and sale contemplated by this Agreement, and a copy of which is contained within the Freedom Heights at Freedom Lofts Condominium Document Package ("Disclosure Package"), which has been furnished by Seller to Purchaser. Purchaser hereby acknowledges that he or she has received the Disclosure Package, and that the same was furnished to him or her at or before the time of execution of this Agreement. Execution of this Agreement shall serve as written acknowledgment of receipt of the items specified in Paragraph 9 of this Agreement. The Unit is shown or shall be shown and delineated on the plat of survey and unit plans for Freedom Lofts Condominium, which survey and plans was or shall be recorded with the Clerk of the Superior Court of Fulton County, Georgia prior to the closing of the purchase and sale contemplated by this Agreement. The term "Unit" as used herein includes all lighting, electrical, mechanical, plumbing, air-conditioning, and other systems or fixtures as are attached thereto, together with such Unit's percentage of undivided interest in the Common Elements of Freedom Lofts Condominium and its interest in the Limited Common Elements assigned to such Unit, all as more particularly described in the Declaration, together with the exclusive right to use Parking Space # ~~3209~~ 2055 and #311.

2. PURCHASE PRICE, EARNEST MONEY AND OPTIONS.

(a) Purchase Price and Payment Terms.

| | |
|---|---|
| Base Purchase Price: | $182,062.00 |
| Plus Price of Options: | $n/a |
| TOTAL PURCHASE PRICE................................................................. | $182,062.00 |

Earnest Money:          Date Received: 3/27/03    $1,000.00
Option Money (Nonrefundable):   Date Received: n/a    $n/a

The Purchase Price shall be payable as follows:

(i) Upon execution of this Agreement, Purchaser shall deliver the Earnest Money to Seller, which shall be held by Seller pursuant to the provisions of subparagraph (c) below;

(ii) Within 7 days of the date of this Agreement, Purchaser shall deliver the Option Money, if any, to Seller, which shall also be held by Seller pursuant to the provision of subparagraph (c) below;

PLAINTIFF'S
EXHIBIT
1

Seller shall deliver Property clean and free of debris at time of possession.  If the Property is destroyed or substantially damaged prior to closing, Seller shall promptly notify Buyer of the amount of insurance proceeds available to repair the damage and whether Seller will complete repairs prior to closing. Buyer may terminate this Agreement not later than 5 days after receiving such notice by giving written notice to Seller.  If Buyer does not terminate this Agreement, Buyer shall receive at closing such insurance proceeds as are paid on the claim which are not spent to repair the damage.

4.   TITLE.  Purchaser acknowledges that the Unit he or she is to purchase may not now be a part of the Condominium. Prior to the closing, Seller shall have submitted the Unit to the Declaration.  Title to the Unit shall be conveyed to Purchaser by limited warranty deed, and title to the Unit shall be insurable or marketable and free and clear of all encumbrances, except the Unit shall be subject to the Declaration, taxes not yet due and payable, and all other encumbrances, zoning ordinances, easements and restrictions of record and leases, if specified in this Agreement. Except as otherwise provided, this Agreement shall not survive the consummation of the purchase and sale contemplated by this Agreement and the delivery of the limited warranty deed from Seller to Purchaser shall extinguish the responsibility of Seller hereunder.  Good and marketable title as used herein shall mean title which a title insurance company licensed to do business in Georgia will insure at its regular rates, subject only to standard exceptions.

5.  CLOSING COSTS.  Seller shall pay closing costs in an amount not to exceed $5,000.00; provided, however, Seller shall only pay such closing costs only if Purchaser obtains financing through a lender preapproved by Seller and the closing is held at the offices of Morris, Manning & Martin, LLP.  Purchaser shall pay all additional costs and fees incident to the securing of financing and the closing of the purchase and sale contemplated hereunder, including, but not limited to, recording fees which are not the obligation of the Seller, title insurance fees, mortgage insurance premiums, escrow deposits, prepaid interest, discount points, lender fees of any kind, transfer taxes, intangible taxes, if applicable, and Purchaser's attorney's fees.

6.  PRORATIONS.

(a) Ad Valorem Taxes.

(i) Purchaser acknowledges that, as of the year in which closing takes place, the Unit may not have been a separately described and assessed parcel of real estate and that, in that event, ad valorem taxes for the Unit for the year in which closing takes place will be assessed under a tax bill in the name of Seller which covers additional property. Should the Unit not be separately described and assessed parcel of real estate, Purchaser agrees to pay Seller at closing that portion of the tax for the year in which closing takes place (based on the prior year if the tax bill for the year in which closing takes place is not yet available) which shall be determined by multiplying the total tax bill by the percentage interest in the Common Elements assigned to the Unit in the Declaration and then prorating the product of such multiplication as of the date of closing. Seller agrees to pay the entire tax bill before it becomes delinquent and, upon written request from Purchaser or any first mortgagee of the Unit, to provide Purchaser or such mortgagee proof of payment. If the amount allocated to the parties is based upon an estimate and the actual bill varies from the estimate, the party who paid too much shall have the right to adjust the prorated amount and within ten (10) days of receipt of notice the party who paid too little shall pay any increased amount based on the actual tax bill to the other party.

(ii) If, in the year in which closing takes place, the Unit is a separately described and assessed parcel of real estate, then ad valorem taxes applicable to the Unit shall be prorated between the Seller and Purchaser as of the date of closing.  If the amount allocated to Purchaser is based upon an estimate and the actual bill varies from the estimate, the party who paid too much shall have the right to adjust the prorated amount within ten (10) days of receipt of notice, the party who paid too little shall pay any increased amount based on the actual tax bill to the other party.

(b) Common Expense Assessments.  Purchaser shall pay his or her pro rata share of the common expense assessment levied against the Unit, as provided in the Declaration, for the year in which the closing shall take place, which common expense assessment shall be adjusted at the closing according to the number of days remaining in the calendar year. Except for that portion of the assessment installment as shall be payable for the month in which the

3

closing shall take place, which shall be prorated between Seller and Purchaser as of the day of closing, such adjusted common expense assessment shall be payable to Freedom Lofts Condominium ("Association"), by Purchaser in equal monthly installments, commencing on the first day of the calendar month immediately following the date of closing, or as otherwise provided by the Board of Directors of the Association. From and after the first day of the first calendar month of the year following the year in which the closing takes place, Purchaser shall pay all amounts as are assessed against the Unit in accordance with the terms and provisions of the Declaration.

(c) Contribution to Capital of Association. In addition to all other sums due hereunder, Purchaser agrees at closing to make a nonrefundable contribution to the working capital account of the Association in an amount equal to two (2) months' general assessments on the Unit.

(d) Insurance Premiums. Purchaser acknowledges that, prior to closing, either Seller or the Association will have pre-paid directly the Unit's pro rata portion of the annual premium on the hazard and liability insurance policies maintained by the Association or Seller, or the Association will have pre-paid such premium with funds previously contributed by Seller to the Association's account. At closing, Purchaser shall pay an amount equal to the Unit's pro rata portion of said annual premium, and from said amount, Purchaser shall reimburse the Seller for the Unit's pro rata portion of said annual premium from the date of closing through the expiration date of the policies.

7. BROKERAGE AND AGENCY. Seller shall pay a real estate commission to Coldwell Banker The Condo Store (the "Listing Broker") pursuant to a separate commission agreement. In no event shall Seller have any obligation to pay any real estate commission except in the event of the closing of this transaction in accordance with the terms of this Agreement. Except as may otherwise be provided, the Listing Broker has represented the Seller in this transaction. If Purchaser worked with or was represented by another cooperating broker, a disclosure of such brokerage relationship set forth in Exhibit "D" shall be a part of this Agreement. If no such brokerage relationship exists, there shall be no Exhibit "D" to this Agreement.

Except as set forth in this Paragraph, Purchaser and Seller represent and warrant to the other that each party has not dealt with another broker, agent, or finder in connection with this transaction and Purchaser and Seller covenant and agree, each to the other, to indemnify and hold each other harmless from any and all losses, damages, costs and expenses including, but not limited to, attorney's fees and court costs that may be incurred or suffered as a result of any claim for any fee, commission, or similar compensation with respect to this transaction made by any person or entity and arising through the actions of the indemnifying party, whether or not such claim for any fee, commission, or similar compensation with respect to this transaction made by any person or entity is meritorious.

8. FREEDOM LOFTS CONDOMINIUM ASSOCIATION, INC.

(a) Governing Documents. Purchaser acknowledges that the Unit being purchased is a portion of the real property and improvements that have been or will be made subject to the Declaration referred to in Paragraph 1. The nature and extent of the rights and obligations of the Purchaser in acquiring and owning the Unit will be controlled by and subject to the Declaration, as well as the Articles of Incorporation, the Bylaws, and the rules and regulations of the Association. Purchaser agrees to comply with all of the terms, conditions and obligations set forth therein.

(b) Membership in Association. Upon conveyance of title to the Unit to Purchaser, Purchaser shall automatically become a member of the Association and shall be subject to the assessment obligations and other provisions set forth in the Declaration, including the obligation of the Purchaser to pay a contribution to the working capital account of the Association referred to in Paragraph 6(c) above.

(c) Amendments to Documents. Purchaser hereby acknowledges and agrees that prior to the closing, Seller or Declarant shall have the right to modify, change, revise and amend, without Purchaser's approval, any or all of the documents (other than this Agreement) which are contained in the Disclosure Package. In the event the Seller or Declarant shall make any amendment, modification, change, or revision to the documents or materials contained in the Disclosure Package which materially affects the rights of the Purchaser or the value of the Unit (except to the extent that such items by their own terms or by the provisions of the Georgia Condominium Act may be changed without the consent of any unit owner or prospective buyer), then a copy of such shall be delivered to the Purchaser and Purchaser shall have the option to (i) consent to such, or (ii) within seven (7) days after receiving a copy of such,

4



13. RESOLUTION OF DISPUTES.  Seller and Purchaser will cooperate with one another in avoiding and informally resolving disputes between them. Seller and Purchaser acknowledge in the event of disputes arising from matters prior to the closing of the Unit which are not informally resolved, that the terms of this agreement herein shall govern in the resolution of the disputes.  In the event of a dispute arising from an issue post-closing, then the parties agree that the resolutions of those disputes will best be achieved through arbitration rather than civil litigation because of the substantial savings of time and expense for all parties and because of the privacy and flexibility associated with arbitration procedures.  If the Seller provides a warranty to the Purchaser, then the terms and procedures of that warranty, involving the Seller, the Purchaser or the Insurer, if relating to such warranty, if any, and any other claim or dispute of any kind or nature between Seller and the Purchaser arising out of or relating in any manner to this Agreement or the Unit shall be decided by binding arbitration as agreed to by the Seller and the Purchaser in accordance with Official Code of Georgia Annotated Sec. 9-9-1, et seq. and the Rules and Procedures of the Arbitrator and such decision shall be final.  If the Seller and the Purchaser cannot agree as to an arbitration group, then Construction Arbitration Associates, Ltd. shall be the Arbitrator.  The provisions of this Paragraph shall survive closing and delivery of the deed to the Purchaser. The parties' agreement to the provisions of this Paragraph is evidenced by their initials below.

INITIALS OF SELLER'S AGENT _____          INITIALS OF PURCHASER _____

14. RIGHT OF ACTION.  Purchaser hereby acknowledges that the Association shall not be entitled to institute any legal action against anyone on behalf of any or all of the Purchasers which is based on any alleged defect in any Unit or the Common Elements, or any damage allegedly sustained by any Purchaser by reason thereof, but rather, that all such actions shall be instituted by the Purchasers owning such Units or served by such Common Elements or allegedly sustaining such damage.  The provisions of this Paragraph shall survive closing and delivery of the deed to the Purchaser.

15. SELLER'S RIGHT OF TERMINATION.  At any time prior to closing, Seller shall have the right to terminate this contract upon written notice to Purchaser in accordance with the notice provisions contained herein.  Upon termination, Seller shall pay to Purchaser the sum of $500.00 and shall, in addition, return all monies paid by Purchaser pursuant to this contract.  Upon termination, the parties shall have no further rights or obligations hereunder.  For the purposes of this provision, a tender of the monies by Seller to Purchaser will be sufficient, whether or not accepted by the Purchaser.

16. NOTICES.  Each notice, except for oral notice of the date and time of closing, required or permitted to be given hereunder must comply with the requirements of this Paragraph.  Each such notice shall be in writing and shall be delivered either by personally delivering it by hand or Federal Express or similar courier service to the person to whom notice is directed, or by facsimile transmission, or by depositing it with the United States Postal Service, certified mail, return receipt requested, with adequate postage prepaid, addressed to the appropriate party (and marked to a particular individual's attention).  Such notice shall be deemed delivered at the time of personal delivery or, if mailed, when it is deposited as provided above, but the time period in which a response to any such notice must be given or any action taken with respect thereto shall commence to run from the date it is personally delivered or, if mailed, the date of receipt of the notice by the addressee thereof, as evidenced by the return receipt. Notwithstanding the above, notice by facsimile transmission shall be deemed to have been given as of the date and time it is transmitted if the sending facsimile machine produces a written confirmation with a date, time and telephone number to which the notice was sent.  Rejection or other refusal by the addressees to accept the notice shall be deemed to be receipt of the notice.  In addition, the inability to deliver the notice because of a change of address of the party of which no notice was given to the other party as provided below shall be deemed to be the receipt of the notice sent.  The addresses of the parties to which notice is to be sent shall be those set forth below.  Such addresses may be changed by either party designating the change of address to the other party in writing.

17. GEORGIA LAW.  This Agreement concerns the sale of real property located in the State of Georgia.  This Agreement, and all of the relationships between the parties hereto, shall be construed and interpreted on accordance with the laws of the State of Georgia.

18. TIME OF ESSENCE.  Time is of the essence of this Agreement.

7




19. FORCE MAJEURE. Either party hereto shall be excused for the period of any delay in the performance of any obligations hereunder when such delay is occasioned by cause beyond the control of the party whose performance is so delayed and the time for performance shall be automatically extended for a like period. Such causes shall include, without limitation, all labor disputes, civil commotion, war, warlike operations, invasion, rebellion, hostilities, military or usurped power, sabotage, government regulations or controls, fire or other casualty, inability to obtain any necessary materials or services, or acts of God.

20. SEVERABILITY. The provisions of this Agreement are intended to be independent, and in the event any provision hereof should be declared by a court of competent jurisdiction to be invalid, illegal or unenforceable for any reason whatsoever, such illegality, unenforceability, or invalidity shall not affect the remainder of this Agreement.

21. CONSTRUCTION OF AGREEMENT. The Purchaser and Seller acknowledge that they have read, understand, and have had the opportunity to be advised by legal counsel as to each and every one of the terms, conditions, restrictions, and effect of all of the provisions of this Agreement and every part of the Disclosure Package, all of which are incorporated herein by reference and made a part hereof, and the Purchaser agrees to the enforcement of any and all of these provisions and affixes his hand and seal hereto with full knowledge of the same. Should any provision of this Agreement require judicial interpretation, it is agreed that the court interpreting or construing the same shall not apply a presumption that the terms hereof shall be more strictly construed against one party by reason of the rule of construction that a document is to be construed more strictly against the party who itself or through its agent prepared the same. It is further agreed that words of any gender used in this Agreement shall be held to include any other gender, any words in the singular number shall be held to include the plural wherever applicable, and that captions and paragraphs numbers, appearing in this Agreement are inserted only as a matter of convenience and in no way define, limit, construe or describe the scope or intent of such paragraph or in any way affect this Agreement.

22. NON-RECORDATION OF AGREEMENT. The parties agree that neither this Agreement nor a copy of this Agreement shall ever be filed of record. If either party does so record, the other party may avail itself of any remedies available to is at law or in equity. There may be recorded, however, at Seller's option, a memorandum of agreement or similar document referencing this Agreement in the Georgia land records.

23. ENTIRE AGREEMENT. This Agreement contains the entire agreement between the parties hereto. No agent, representative, salesman or officer of the parties hereto has authority to make, or has made, any statements, agreements, or representations, either oral or in writing, in connection herewith, modifying, adding to, or changing the terms and conditions hereof and neither party has relied upon any representation or warranty not set forth in this Agreement. No dealings between the parties or customs shall be permitted to contradict, vary, add to, or modify the terms hereof.

24. DISCLOSURES. Purchaser acknowledges the following: (a) that he or she received and read the Condominium Disclosure Package; (b) the Condominium Association budget provided to Purchaser is based on estimated expenses only and may increase or decrease significantly when the actual expenses of the Condominium Association become known; (c) the Condominium is located adjacent to thoroughfares which could be improved or widened in the future; (d) Purchaser is aware that other conditions existing off the Condominium may adversely affect the Unit and its value; (e) Purchaser acknowledges that there may be ongoing renovations to the Unit and/or Common Elements and/or the adjacent units and property before and after closing. Purchaser acknowledges that Seller will not be obligated to give any reduction in the purchase price, or reimburse any expense, or place any funds in escrow due to ongoing renovation; and (f) PURCHASER UNDERSTANDS AND ACKNOWLEDGES THAT PURCHASER MAY NOT LEASE THE UNIT UNLESS SUCH UNIT HAS BEEN CONFERRED OPEN LEASING STATUS IN ACCORDANCE WITH SECTION 15 OF THE CONDOMINIUM DECLARATION. ATTACH EXHIBIT "E" HERETO IF PURCHASER DESIRES TO LEASE THE UNIT.

8



25. **OFFER.** This Agreement, as executed by Purchaser, shall constitute an offer to Seller. Seller may accept the same, if at all, by delivering to Purchaser at least one executed original of this Agreement prior to the time that Purchaser shall notify Seller, in writing, of Purchaser's revocation of this offer. The date of this Agreement is the date of execution by Seller.

26. _____ [PURCHASER AND SELLER INITIAL HERE IF THIS PARAGRAPH IS APPLICABLE]. **RIGHT OF FIRST REFUSAL.** If this paragraph is initialed, Purchaser and Seller both acknowledge that the current tenant of the Unit has a right of first refusal to purchase the Unit which expires on n/a, 2003 and that Seller's obligations hereunder are contingent upon such tenant's failure to exercise its right of first refusal. In the event that such tenant exercises its right to purchase the Unit, Seller shall promptly notify Purchaser and this Agreement shall become null and void and all Earnest Money and Option Money shall be returned in full to Purchaser.

27. **SPECIAL STIPULATIONS.** The following Exhibits are attached hereto and by this reference made a part hereof: Exhibit "A" -Condominium Legal Description; Exhibit "B" -Unit Floor Plan; Exhibit "C" -Financing (choose one); Exhibit "D" -Selling Broker (if applicable); Exhibit "E" -Request for Open Leasing Status (if applicable); Exhibit "F" -Selections and Options.

| ITEM | DESCRIPTION | SIGNED |
|---|---|---|
| 1. | Seller to provide a 2 - 10 Home Buyer's Warranty Plan at no cost to Buyer. | |
| 2. | Seller to contribute $5,000.00 towards closing costs including prepaids, escrows, capital contribution and title insurance, using approved lender. | |
| 3. | Seller to pay 3% ($5,462.00) to Nehemiah Down Payment Assistance Program. | |
| 4. | Contract contingent upon one assigned covered parking space in addition to space #311. #'s 283 ARE ASSIGNED PRIOR TO SALES | |
| 5. | Purchaser is a licensed real estate agent in the state of Georgia. | |
| | | |
| | | |
| | | |

**PURCHASER(S):**

Date: 3/27/03

Sign Name: _____
Tecia Spiller

Sign Name: _____

Address: 993 Course Ridge Drive
Lithonia, GA 30058
Phone: (W) 404-237-9011; (H) 404-362-4745

SELLING BROKER: Movetoday
Broker or Affiliated Licensee
Name: Tecia Spiller
Phone: 404-357-4745
Broker Code: H-45810

**SELLER: Freedom Parkway Apartments, L.L.C.**

Date: 4-3-03

By: _____

Name: GARY FRGTONG

Title: SELLER'S AGENT

LISTING BROKER: Coldwell Banker The Condo Store
By: _____
Broker or Affiliated Licensee
Name: Geri Tonda
Phone: 678-651-0119
Broker Code: CBRD44



9

Deed Book 34731 Pg 481
Filed and Recorded Apr-21-2003 12:00pm
2003-0138434
Real Estate Transfer Tax $182.10
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

Return Recorded Document to:
Morris, Manning, & Martin, LLP
Attorneys at Law
5775C Peachtree Dunwoody Road
Suite 150
Atlanta, Georgia 30342
File #42585

# LIMITED WARRANTY DEED

STATE OF GEORGIA

COUNTY OF FULTON

This Indenture made this 4th day of April, in the year Two Thousand and Three, between FREEDOM PARKWAY APARTMENTS, L.L.C., a Georgia Limited Liability Company, of the County of Fulton, State of Georgia, as party or parties of the first part, hereinunder called Grantor, and Teela Spiller, as party or parties of the second part, hereinafter called Grantee (the words "Grantor" and "Grantee" to include their respective heirs, successors and assigns where the context requires or permits).

WITNESSETH that: Grantor, for and in consideration of the sum of TEN AND 00/100'S ($10.00) Dollars and other good and valuable consideration in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee,

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 18 OF THE 14TH DISTRICT OF FULTON COUNTY, GEORGIA, AND BEING MORE PARTICULARLY DESCRIBED ON EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF BY THIS REFERENCE.

This Deed is given subject to all easements and restrictions of record, if any.

TO HAVE AND TO HOLD the said tract or parcel of land, with all and singular the rights, members and appurtenances thereof, to the same being, belonging, or in anywise appertaining, to the only proper use, benefit and behoof of the said Grantee forever in FEE SIMPLE.

AND THE SAID Grantor will warrant and forever defend the right and title to the above described property unto the said Grantee against the claims of all persons claiming by, through or under Grantor.

IN WITNESS WHEREOF, Grantor has hereunto set grantor's hand and seal this day and year first above written.

Signed, sealed and delivered in the presence of:

FREEDOM PARKWAY APARTMENTS, L.L.C.
A Georgia Limited Liability Company

Witness

By: _____(Seal)
_____ its Authorized Agent

Notary Public

**PLAINTIFF'S EXHIBIT 2**

EXHIBIT "A"
(FREEDOM LOFTS - Phase 2)

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 18 OF THE 14TH DISTRICT OF FULTON COUNTY, GEORGIA, AND BEING IDENTIFIED AND DEPICTED AS UNIT NUMBER 3201 OF FREEDOM LOFTS, PHASE 2, TOGETHER WITH ALL RIGHT, TITLE AND INTEREST IN THE UNIT AND THE APPURTENANCES THERETO UNDER THAT CERTAIN DECLARATION OF CONDOMINIUM RECORDED IN DEED BOOK 31169, PAGE 121, IN THE OFFICE OF THE CLERK OF SUPERIOR COURT OF FULTON COUNTY, GEORGIA, RECORDS, (SAID DECLARATION TOGETHER WITH ALL EXHIBITS THERETO AND AS MAY BE AMENDED FROM TIME TO TIME, HEREINAFTER BEING REFERRED TO COLLECTIVELY AS THE 'DECLARATION') PLAT FOR FREEDOM LOFTS CONDOMINIUM PHASE 2, RECORDED AT CONDOMINIUM PLAT BOOK 15, PAGE 39, AFORESAID RECORDS AND PLANS FOR PHASE 2, RECORDED IN CABINET 19, PAGE 121, AFORESAID RECORDS (THE 'PROPERTY'), THE INTEREST HEREBY CONVEYED INCLUDES, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, THE UNDIVIDED PERCENTAGE INTEREST IN THE COMMON ELEMENTS OF FREEDOM LOFTS CONDOMINIUM.

(File No. #142585)

Deed Book 34731 Pg 482
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

Nm:WS(632385), Rq:469,1

CROSS REFERENCE
.DE Book 31351 Page 288

Deed Book 31169 Pg  121
Filed and Recorded Oct-19-2001 08:22am
2001-0265851
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

After recording return to:
Darla Grinstead McKenzie
Morris, Manning & Martin, L.L.P.
3715-C Peachtree Dunwoody Road
Suite 150
Atlanta, Georgia 30342

# DECLARATION OF CONDOMINIUM
# FOR

# FREEDOM LOFTS CONDOMINIUM

# FULTON COUNTY, GEORGIA

PLAINTIFF'S
EXHIBIT
3



EXHIBIT

.WS(532395), Rq:463,4

Deed Book 31169 Pg 124

## DECLARATION OF CONDOMINIUM

## FOR

## FREEDOM LOFTS CONDOMINIUM

This Declaration is made on the date set forth below by Freedom Parkway Lofts, L.L.C., a Georgia limited liability company, for the purpose of submitting the Property, as defined below, to the Georgia Condominium Act.

**1.  NAME.**

The name of the condominium is Freedom Lofts Condominium (hereinafter sometimes called "Freedom Lofts" or the "Condominium," as further defined herein), which condominium hereby submits to the Georgia Condominium Act, O.C.G.A. § 44-3-70, et seq.

**2.  DEFINITIONS.**

Generally, terms used in this Declaration, the Bylaws, and the Articles of Incorporation shall have their normal, generally accepted meanings or the meanings given in the Act or the Georgia Nonprofit Corporation Code. Unless the context otherwise requires, the terms used in this Declaration, the Bylaws, and the Articles of Incorporation shall have the following meanings:

a) Act shall mean the Georgia Condominium Act, O.C.G.A. §44-3-70, et seq., as such act may be amended from time to time.

b) Additional Property shall mean all interests, rights and title to the property, or any portion of the property, described in Exhibit "B" attached hereto and incorporated herein, including, without limitation, all improvements, buildings, structures, fixtures, equipment, machinery and apparatus located thereon, and all hereditaments and appurtenances thereto.

c) Architectural Control Committee or ACC shall mean the committee established to exercise the architectural review powers set forth in Paragraph 13 hereof.

d) Area of Common Responsibility shall mean and refer to the Common Elements, together with those areas, if any, which by the terms of this Declaration or by contract or agreement with any other person or entity become the responsibility of the Association. The Area of Common Responsibility specifically includes but is not limited to all obligations of the Association under the terms of the Reciprocal Easement Agreement.

e) Articles or Articles of Incorporation shall mean the Articles of Incorporation of the Association, which have been filed with the Secretary of State of the State of Georgia.

Deed Book 31169 Pg 125

f) Association shall mean Freedom Lofts Condominium Association, Inc., a Georgia nonprofit corporation, its successors or assigns.

g) Board or Board of Directors shall mean the elected body responsible for management and operation of the Association.

h) Building or Buildings shall mean any or all of the buildings, as the context requires, constructed on the Property as shown in the Plat and Plans for Freedom Lofts Condominium, as may be amended and expanded hereunder.

i) Bylaws shall mean the Bylaws of the Association, attached to this Declaration as Exhibit "D" and incorporated herein by this reference.

j) Common Elements shall mean those portions of the property subject to this Declaration which are not included within the boundaries of a Unit, as more particularly described in this Declaration.

k) Common Expenses shall mean the expenses incurred or anticipated to be incurred by the Association for the general benefit of the Condominium, including, but not limited to those expenses incurred for maintaining, repairing, replacing, and operating the Area of Common Responsibility.

l) Condominium shall mean all that property described in Exhibit "A" attached hereto and incorporated herein by this reference, submitted to the provisions of the Act by this Declaration.

m) Condominium Instruments shall mean this Declaration and all exhibits to this Declaration, including the Bylaws of the Association, and the Plats and Plans, all as may be supplemented or amended from time to time.

n) Declarant shall mean Freedom Parkway Lofts, L.L.C., a Georgia limited liability company, which is the owner of the Property and has executed this Declaration. The term "Declarant" includes any successor-in-title thereto who comes to stand in the same relation to the Condominium as the Declarant, specifically including any Person who acquires the Declarant's interest pursuant to the foreclosure of a deed to secure debt or similar instrument encumbering Declarant's interest in the Property. From the time of the recordation of any amendment to the Declaration expanding this Condominium, all persons who execute that amendment or on whose behalf that amendment is executed, as required by the Act, shall also come within this definition. This term does not include, in its capacity as such, any mortgagee, any lien holder, any person having an equitable interest under any contract for the sale and/or lease of a Unit, or any occupant of a Unit under a lease.

o) Limited Common Elements shall mean a portion of the Common Elements reserved for the exclusive use of those entitled to occupy one (1) or more, but less than all, Units, as more particularly set forth in this Declaration.

- 2 -

Nrn:VVS(532395), Rq:463.6

p) Majority means those eligible votes, Owners, or other group, as the context may indicate, totaling more than fifty (50%) percent of the total eligible number.

q) Mortgage shall refer to any mortgage, deed to secure debt, deed of trust, or other transfer or conveyance for the purpose of securing the performance of an obligation, including, but not limited to, a transfer of conveyance of fee title for such purpose.

r) Mortgage Holder shall mean the holder of any mortgage.

s) Occupant shall mean any Person occupying all or any portion of a Unit for any period of time, regardless of whether such Person is a tenant or the Owner of such Unit.

t) Owner shall mean the record title holder of a Unit within the Condominium, but shall not include a Person who is only a Mortgage Holder.

u) Person shall mean any individual, corporation, firm, association, partnership, trust, or other legal entity.

v) Plans shall mean the floor plans for Freedom Lofts Condominium prepared by Smith, Dalia Architects, filed in the Condominium File Cabinet No. $\frac{1}{0}$, Folder No. 5 7 Fulton County, Georgia, records and any plans of units located on the Additional Property or any portion thereof, and any revisions thereto as may be filed for record.

w) Plat shall mean the plat of survey for Freedom Lofts Condominium, prepared by H. E. Harper, filed in Plat Book 14, Page 161 Fulton County, Georgia, Records and any plats showing the addition of the Additional Property or any portion thereof.

x) Reciprocal Easement Agreement shall mean that certain Reciprocal Easement Agreement by and between Declarant and Freedom Parkway Apartments, L.L.C., recorded at Deed Book 31169, Page 76 Fulton County, Georgia records.

y) Unit shall mean that portion of the Condominium intended for individual ownership and use as more particularly described in this Declaration and shall include the undivided ownership in the Common Elements assigned to the Unit by this Declaration.

## 3.   LOCATION AND DESCRIPTION OF THE PROPERTY.

The Condominium subject to this Declaration and the Act is located in Land Lot 18 of the 14th District of Fulton County, Georgia, being more particularly described in Exhibit "A" attached to this Declaration, which exhibit is specifically incorporated herein by this reference. The Plat and Plans relating to the Condominium will be filed in the Fulton County, Georgia records as each Unit is submitted to this Declaration. The Plat and Plans are incorporated herein by reference as fully as if the same were set forth in their entirety herein.

The Condominium consists of one building having 60 residential Units, together with the Common Elements and Limited Common Elements.

Nrn:VVS(532396), Rq:463.9

Dee  .ok 31169 Pg  129

in the Common Elements attributable to such Unit, together with membership in the Association and an undivided interest in the funds and assets held by the Association.

## 5.   COMMON ELEMENTS.

The Common Elements consists of all portions of the Condominium not located within the boundaries of a Unit.

Ownership of the Common Elements shall be by the Unit Owners as tenants-in-common. The percentage of undivided interest in and to the Common Elements attributable to each Unit is set forth on Exhibit "C". If Declarant expands the Condominium to include any portion of the Additional Property, then the undivided interest in the Common Elements allocated to each Unit shall be reallocated by the Board of Directors and the Declarant so that each Unit in the Condominium, after the addition of the portion of the Additional Property, shall have an undivided interest in the Common Elements similar to the percentage interest of similar Units with similar square footage and the undivided interest of each Unit, including Additional Units, shall be contained in a table recorded with the amendment adding such Additional property to the Condominium.

The Common Elements shall remain undivided, and no Owner nor any other person shall bring any action for partition or division of the whole or any part thereof except as provided in the Act. Except for the Limited Common Elements or as otherwise provided herein, each Owner and the Association may use the Common Elements for the purposes for which they are intended, but no such use shall enter or encroach upon the lawful rights of the other Owners.

## 6.   LIMITED COMMON ELEMENTS.

(a)     The Limited Common Elements located on the Condominium and the Unit(s) to which they are assigned are:

  (i)     all windows and exterior doors designed to serve a single Unit as well as any shutters, awnings, window boxes, doorsteps and any balcony, deck, porch or terrace area adjoining a Unit and reasonably accessible only from such Unit is assigned as a Limited Common Element to the Unit to which it is connected;

  (ii)    the portion of the Common Elements on which there is located any portion of the air conditioning or heating system exclusively serving a particular Unit or Units is assigned as a Limited Common Element to the Unit or Units so served;

  (iii)   any electric and water meter which serves only one Unit is assigned as a Limited Common Element to the Unit so served;

  (iv)    in the event that Declarant expands the Condominium to include as Common Elements that part of the Additional Property on which the parking lot is or will be built, then the parking spaces, storage spaces and mailboxes located therein or thereon may be assigned as Limited Common

Freedom Lofts Declaration.doc

Nrm:WS(532395), Rq:463,10

Elements assigned to specific Units.  Parking and storage spaces and mailboxes may be initially assigned or reassigned by amendment to this Declaration as provided in subparagraphs (b) and (c) below.

(b)    The Association's Board of Directors, without need for a membership vote, is hereby authorized to assign and to reassign Limited Common Elements, provided that such assignment or reassignment shall be made in accordance with the provisions of Section 44-3-82(b) of the Act.  A Common Element not previously assigned as a Limited Common Element may be so assigned and a Limited Common Element may be reassigned by the Board, without the need for a vote of the Association, upon written application to the Association by the Unit Owner or Owners for whose exclusive use such Common Element is requested or whose use of the Limited Common Element previously assigned is directly affected.  Upon such application, the Association shall prepare and execute an amendment to the Declaration assigning the Common Element as a Limited Common Element or reassigning the Limited Common Element, which amendment shall be executed by the Owner or Owners making such application.  Such amendment shall be delivered and become effective as provided in Section 44-3-82 of the Act.  An amendment to assign a Common Element not previously assigned as a Limited Common Element shall not require the approval of the Association or the Board if the request is made by the Declarant, or its affiliate.  Such a request made by any other Person shall require the Board's consent.

(c)    For so long as the Declarant owns any Unit primarily for the purpose of sale, Declarant shall have the right to sell to Unit Owners parking spaces or storage spaces to be assigned as Limited Common Elements pursuant to subparagraphs (a) and (b) above.  The proceeds of the sale of storage spaces or parking spaces as Limited Common Elements shall belong to the Declarant.

## 7.    ASSOCIATION MEMBERSHIP AND ALLOCATION OF VOTES.

All Unit Owners, by virtue of their ownership of a fee or undivided fee interest in any Unit in the Condominium, excluding Persons holding such interest under a Mortgage, are members of the Association, and, except as otherwise provided herein or in the Bylaws, shall be entitled to vote on all matters upon which members of the Association are entitled to vote pursuant to the Declaration and in accordance with the Bylaws.  Subject to the provisions of the Condominium Instruments, each Owner shall be entitled to one (1) vote for each Unit in which he or she holds the interest required for membership.  If the Declarant expands the Condominium to include any portion of the Additional Property, then the vote allocated to each Unit shall be reallocated so that the Owner of each Unit in the Condominium after the addition of the portion of the Additional Property shall be entitled to (1) vote.

## 8.    ALLOCATION OF LIABILITY FOR COMMON EXPENSES.

(a)    Except as provided below, or elsewhere in the Act or Condominium Instruments, the amount of all Common Expenses shall be assessed against all the Units in accordance with the percentage of undivided interest in the Common Elements

Deed Book 31169 Pg 131

appurtenant to the Unit as shown on Exhibit "C." If the Declarant expands the
Condominium to include any portion of the Additional Property, then the liability
for Common Expenses allocated to each Unit hereof shall be reallocated so that
each Unit in the Condominium, after the addition of the portion of the Additional
Property, shall be liable for Common Expenses based upon the assessments set
forth by the Board of Directors and Declarant for like Units equal to the set ratios
of each such Unit, including additional Units. New Units assessments shall be
based upon the assessments and ratios set by the Board of Directors and Declarant
for the Units.

(b)    The Board of Directors shall have the power to assess specially pursuant to this
Paragraph and to Section 44-3-80(b) of the Act as, in its discretion, it shall deem
appropriate. Failure of the Board of Directors to exercise its authority under this
Paragraph shall not be grounds for any action against the Association or the Board
of Directors and shall not constitute a waiver of the Board's right to exercise its
authority under this Paragraph. in the future with respect to any expenses,
including an expense for which the Board has not previously exercised its
authority under this Paragraph.

    (i)    Any Common Expenses benefiting less than all of the Units or
significantly disproportionately benefiting all Units may be specially
assessed equitably among all of the Units which are benefited according to
the benefit received. However, expenses incurred for the maintenance,
repair, or replacement of the Area of Common Responsibility, shall not be
specially assessed.

    (ii)   Any Common Expenses occasioned by the conduct of less than all of
those entitled to occupy all of the Units or by the Occupant(s), licensees or
invitees of any such Unit or Units may be specially assessed against such
Unit or Units.

9.    **ASSOCIATION RIGHTS AND RESTRICTIONS.**

In addition to and not in limitation of all other rights it may have, the Association, acting
through its Board of Directors, shall have the right and authority:

(a)    to enter the Units for maintenance, emergency, security, or safety purposes, which
right may be exercised by the Association's Board of Directors, officers, agents,
employees, managers, and all police officers, firemen, ambulance personnel, and
similar emergency personnel in the performance of their respective duties. Except
in an emergency situation, entry shall be only during reasonable hours and after
reasonable notice to the Owner or Occupant of the Unit;

(b)    to make and to enforce reasonable rules and regulations governing the use of the
Condominium, including the Units, Limited Common Elements and Common
Elements;

- 7 -

Deed Book 31169 Pg 132

(c)    to enforce use restrictions, other Declaration and Bylaws provisions, and rules and regulations by the imposition of reasonable monetary fines and suspension of use and voting privileges as provided in Section 44-3-76 of the Act, as amended;

(d)    to grant permits, licenses, right of way, utility easements, and other easements;

(e)    to control, manage, operate, maintain, improve and replace all portions of the Area of Common Responsibility;

(f)    to deal with the Condominium in the event of damage or destruction as a result of casualty loss, condemnation or eminent domain, in accordance with the provisions of the Act and this Declaration;

(g)    to acquire, hold, and dispose of tangible and intangible personal property and real property;

(h)    to close permanently or temporarily any portion of the Common Elements (excluding the Limited Common Elements) with thirty (30) days prior notice to all Owners, except that, in emergency situations requiring a temporary closing, prior notice shall not be required so long as notice is given within three (3) days after the closing explaining the reason for the closing. Notwithstanding the above, the Owners may re-open closed Common Elements by a majority of the total Association vote, cast at a duly called special or annual meeting; and

(i)    to establish a construction deposit in a reasonable amount determined by the Board of Directors to be paid by all Owners making modifications, alterations or additions to their Units in order to protect the Condominium against damage due to the transportation and use of construction materials in the Condominium. Costs for repair of such damage may be deductible from the construction deposit and any additional expenses may be specifically assessed against the Unit under subparagraph 8(b)(ii) above.

## 10.   ASSESSMENTS.

(a)    Purpose of Assessment. The Association shall have the power to levy assessments as provided herein and in the Act. The assessments for Common Expenses provided for herein shall be used for the general purposes of promoting the recreation, health, safety, welfare, common benefit, and enjoyment of the Owners and Occupants of Units in the Condominium as may be more specifically authorized from time to time by the Board.

(b)    Creation of the Lien and Personal Obligation For Assessments. Each Owner of any Unit, by acceptance of a deed thereof, whether or not it shall be so expressed in such deed, is deemed to covenant and agree to pay to the Association: (I) annual assessments or charges; (ii) special assessments, such assessments to be established and collected as hereinafter provided; and (iii) specific assessments against any particular Unit which are established pursuant to the terms of this

Nm:WS(532395), Rq:463,13

Deed Book 31169 Pg   133

Declaration, including but not limited to reasonable fines imposed in accordance with the terms of this Declaration.

All such assessments, together with charges, interest, costs and reasonable attorney's fees actually incurred, and if the Board so elects, rents, in the maximum amount permitted by the Act, shall be a charge on the Unit and shall be a continuing lien upon the Unit against which each assessment is made. Such amounts shall also be the personal obligation of the Person who was the Owner of such Unit at the time when the assessment fell due. Each Owner and his or her grantee shall be jointly and severally liable for all assessments and charges due and payable at the time of any conveyance.

Assessments shall be paid in such manner and on such dates as may be fixed by the Board of Directors; unless otherwise provided, the annual assessments shall be paid in equal monthly installments due on the first day of each calendar month. No Owner shall exempt himself or herself from liability for or otherwise withhold payment of assessments for any reason whatsoever, including, but not limited to, non-use of the Common Elements, the Association's failure to perform its obligations required hereunder, or inconvenience or discomfort arising from the Association's performance of its duties. The lien provided for herein shall have priority as provided in the Act.

(c)   Delinquent Assessments.   All assessments and related charges not paid on or before the due date shall be delinquent, and the Owner shall be in default.

    (i)   If any monthly installment of annual assessments or any part thereof is not paid in full by the tenth (10th) day of the month or if any other charge is not paid within ten (10) days of the due date, a late charge equal to the greater of ten ($10.00) dollars or ten (10%) percent of the amount not paid, or such higher amounts as may be authorized by the Act, may be imposed without further notice or warning to the delinquent Owner and interest at the rate of ten (10%) percent per annum or such higher rate as may be permitted by the Act shall accrue from the due date.

    (ii)   If part payment of assessments and related charges is made, the amount received may be applied first to costs and attorney's fees, then to late charges, then to interest, then to delinquent assessments, and then to current assessments.

    (iii)   If assessments, fines or other charges or any part thereof due from an Owner remain delinquent and unpaid for a period greater than fifteen (15) days from the date due, a notice of delinquency may be given to that Owner stating that if the assessment, fine or charge remains delinquent for more than ten (10) days from the date of the notice of delinquency, the Board of Directors may accelerate and declare immediately due all of that Owner's unpaid installments of the annual assessment and of any special assessment. If an Owner fails to pay all assessments and related charges

- 9 -

annual meeting.  The budget and the assessment shall become effective unless disapproved at a duly called and constituted annual meeting of the Association by a vote of a majority of the total Association vote; provided, however, if a quorum is not obtained at the annual meeting, the budget shall become effective even though a vote to disapprove the budget could not be called at this meeting.

Notwithstanding the foregoing, in the event that the membership disapproves the proposed budget or the Board fails for any reason to determine the budget for the succeeding year, then and until such time as a budget shall have been determined as provided herein, the budget in effect for the current year shall continue for the succeeding year.  In such case, the Board may propose a new budget at any time during the year at a special meeting of the Association.  The proposed budget and assessment shall be delivered to the members at least thirty (30) days prior to the proposed effective date thereof and at least seven (7) days prior to the special meeting.  The approval procedure set forth above for budgets considered at annual meetings shall also apply to budgets considered at special meetings.

Enforcement under this subparagraph is not dependent upon or related to other restrictions and/or other actions.

(e)     Special Assessments.  In addition to the annual assessment provided for in subparagraph (b) above, the Board, at any time, and in addition to any other rights it may have, levy a special assessment against all Owners, notice of which shall be sent to all Owners.  Any special assessment (except as provided in Paragraph 8(b) regarding the power to assess specially pursuant to Section 44-3-80(b) of the Act and Paragraph 12(b) herein, regarding repair or reconstruction of casualty damage to or destruction of all or part of the Condominium) which would cause the average total of special assessments levied in one fiscal year to exceed two hundred ($200.00) dollars per Unit, shall be approved by a majority of the total Association vote prior to becoming effective.

(f)     Capital Budget and Contribution.  The Board of Directors shall annually prepare a capital budget which shall take into account the number and nature of replaceable assets, the expected life of each asset, and the expected repair or replacement cost.  The Board shall set the required capital contribution, if any, in an amount sufficient to permit meeting the projected capital needs of the Association, a shown on the capital budget, with respect both to amount the timing by equal annual assessments over the period of the budget.   The capital contribution required, if any, shall be fixed by the Board and included within the budget and assessment as provided in subparagraph (d) of this Paragraph.  A copy of the capital budget shall be distributed to each member in the same manner as the operating budget.

Notwithstanding any other provisions of this Declaration, during the time the Declarant appoints the directors and officers of the Association pursuant to Article III, Section 2 of the Bylaws, Declarant (i) may collect a non-refundable contribution to the capital fund of the Association from the initial purchaser of

each Unit in the amount of two (2) months of the general assessments, and (ii) shall not be required to prepare a capital budget, set any other capital contribution, or otherwise collect amounts for capital reserves. Any capital contribution collected by the Declarant shall not be collected against a Mortgagee which takes title to a Unit pursuant to foreclosure.

(g)  Statement of Account. Any Owner, Mortgagee, or a Person having executed a contract for the purchase of a Unit, or a lender considering a loan to be secured by a Unit, shall be entitled, upon written request, to a statement from the Association setting forth the amount of assessments due and unpaid, including any late charges, interest, fines, or other charges against a Unit. The Association shall respond in writing within five (5) days of receipt of the request for a statement; provided, however, the Association may require the payment of a fee, not exceeding ten ($10.00) dollars, or such higher amount as may be authorized by the Act, as a prerequisite to the issuance of such a statement. Such written statement shall be binding on the Association as to the amount of assessments due on the Unit as of the date specified herein.

(h)  Surplus Funds and Common Profits. Pursuant to Section 44-3-108 of the Act, common profits from whatever source shall be applied to the payment of Common Expenses. Any surplus funds remaining after the application of such common profits to the payment of Common Expenses shall, at the option of the Board of Directors, either be distributed to the Owners or credited to the next assessment chargeable to the Owners in proportion to the liability for Common Expenses attributable to each Unit, or added to the Association's reserve account.

## 11.  INSURANCE.

The Association shall obtain and maintain at all times, as a Common Expense, insurance as required by Section 44-3-107 of the Act, as amended, and as required herein. To the extent reasonably available at reasonable cost, the Association's insurance policy shall cover any of the following types of property contained within a Unit, regardless of ownership: (a) fixtures, improvements and alterations that are a part of the building or structure; (b) appliances, such as those used for refrigerating, ventilating, cooking, dishwashing, laundering, security or housekeeping. If such insurance is not reasonably available, the Association's insurance policy may exclude improvements and betterments made by the Unit Owner and may exclude the finished surfaces of perimeter and partition walls, floors, and ceilings within the Units (i.e., paint, wallpaper, paneling, other wall covering, tile, carpet, and any floor covering; provided, however, floor covering does not mean unfinished hardwood or unfinished parquet flooring).

All insurance purchased by the Association pursuant to this Paragraph shall run to the benefit of the Association, the Board of Directors, officers, all agents and employees of the Association, the Unit Owners, and their respective Mortgagees, and all other persons entitled to occupy any Unit, as their interests may appear. The Association's insurance policy may contain a reasonable deductible, and the amount thereof shall not be subtracted from the face amount of the policy in determining whether the insurance equals at least the replacement cost of the insured property.

- 12 -

Nm:WS(532385), Rq:463.41

Deed Book 31169 Pg 161

(a) Use and Enjoyment. Each Unit Owner and Occupant shall have a right and easement of use and enjoyment in and to the Common Elements (including the right of access, ingress and egress to and from his or her Unit over those portions of the Condominium designated for such purpose), and such easement shall be appurtenant to and shall pass with the title to such Unit, subject to the rights of the Unit Owners to the exclusive use of the Limited Common Elements assigned to their respective Units and to the right of the Association to control the use and enjoyment of the Common Elements as provided by the terms of this Declaration including, but not limited to, the right of the Association to suspend voting and use privileges as provided herein.

(b) Easements between the Condominium and the Additional Property. The Condominium is subject to and benefitted by an easement for the recreational facilities and parking lot located or to be located on the Additional Property and the owners, residents and tenants of the Condominium has non-exclusive rights of ingress and egress over, across and through the Additional Property for ingress and egress to and the non-exclusive use and enjoyment of the recreational facilities located on the Additional Property.

The Condominium is further subject to and benefited by reciprocal easements with the Additional Property for surface water drainage, pedestrian and vehicular ingress and egress over existing roads and sidewalks, utility connections, rental offices, signs, mail boxes and dumpsters and common wall maintenance and repair.

Should any Units or portions thereof encroach on the Additional Property in a manner permitted for encroachments by Units on the Common Elements pursuant to subsection (d) below or pursuant to the Act, or should in subsection (d) be required, an easement for such encroachments upon the Additional Property is hereby granted.

(c) Encroachments. If any portion of the Common Elements encroaches upon any Unit, or if any Unit encroaches upon any other Unit or upon any portion of the Common Elements, as a result of the construction, reconstruction, repair, renovation, restoration, shifting, settlement or movement of any portion of the Condominium, a valid easement for the encroachment and for the maintenance, repair and replacement thereof shall exist so long as the encroachment exists. In the event that any building, any Unit, any adjoining Unit, or any adjoining portion of the Common Elements shall be partially or totally damaged or destroyed as a result of fire or other casualty or as a result of condemnation or eminent domain proceedings, and then repaired or reconstructed, encroachments of portions of the Common Elements, due to such repair or reconstruction, shall be permitted, and valid easements for such encroachments and the maintenance, repair and replacement thereof shall exist.

(d) Rights of Association. There shall be a general easement in favor of the Association, its directors, officers, agents, and employees (including, without

Freedom Lofts Declaration.doc

Deed Book 31169 Pg 182
|||||||||||||||||||||||||||||||||||||||||

records and books of account showing all receipts and disbursements, for preparing all required financial statements and tax returns, and for the deposit of all monies and other valuable effects in the name of the Association or the managing agent in such depositories as may from time to time be designated by the Board of Directors. The Treasurer shall be responsible for the preparation of the budget as provided in the Declaration. The Treasurer may delegate all or a part of the preparation and notification duties associated with the above responsibilities to a management agent.

Section 9.      Other Officers.  Other offices may be created by the Board, and the Board members which hold such offices shall have such titles and duties as are defined by the Board.

Section 10.     Agreements, Contracts-Deeds, Leases, Etc.  All agreements, contracts, deeds, leases, Checks, promissory notes, and other instruments of the Association shall be executed by at least two (2) officers or by such other person or persons as may be designated by resolution of the Board of Directors.

## Article V.
## Rule Making and Enforcement

Section 1.      Authority and Enforcement.  The Condominium shall be used only for those uses and purposes set out in the Declaration. The Board of Directors shall have the authority to make, modify, repeal and enforce reasonable rules and regulations governing the conduct, use, and enjoyment of Units and the Common Elements; provided, copies of all such rules and regulations shall be furnished to all Owners and Occupants. Any rule or regulation may be repealed by the affirmative vote or written consent of a Majority of the total Association vote at an annual or special meeting of the membership. Every Owner and Occupant shall comply with the Declaration, Bylaws and rules and regulations of the Association, and any lack of compliance therewith shall entitle the Association and, in an appropriate case, one or more aggrieved Unit Owners, to take action to enforce the terms of the Declaration, Bylaws or rules and regulations.

The Board shall have the power to impose reasonable fines, which shall constitute a lien upon the Owner's Unit, and to suspend an Owner's right to vote or to use the Common Elements for violation of any duty imposed under the Declaration, these Bylaws, or any rules and regulations duly adopted hereunder; provided, however, nothing herein shall authorize the Association or the Board to limit ingress and egress to or from a Unit. In the event that any Occupant of a Unit violates the Declaration, Bylaws, or a rule or regulation and a fine is imposed, notice of such violation shall be sent to the Owner and Occupant, and the fine shall first be assessed against such Occupant; provided, however, if the fine is not paid by the Occupant within the time period set by the Board, the Unit Owner shall pay the fine upon notice from the Association, and the fine shall be an assessment and a lien against the Unit until paid. The failure of the Board to enforce any provision of the Declaration, Bylaws, or any rule or regulation shall not be deemed a waiver of the right of the Board to do so thereafter.

Section 2.      Fining and Suspension Procedure.  The Board shall not impose a fine, suspend the right to vote or suspend the right to use the Common Elements (provided, however,

-10-                                                        417844

Ga. Code Ann., § 44-3-76

West's Code of Georgia Annotated Currentness
   Title 44. Property
      ᵏ🗐 Chapter 3. Regulation of Specialized Land Transactions (Refs & Annos)
         ᵏ🗐 Article 3. Condominiums
            ➡§ 44-3-76. Compliance with condominium instruments

Every unit owner and all those entitled to occupy a unit shall comply with all lawful provisions of the condominium instruments. In addition, any unit owner and all those entitled to occupy a unit shall comply with any reasonable rules or regulations adopted by the association pursuant to the condominium instruments which have been provided to the unit owners and with the lawful provisions of bylaws of the association. Any lack of such compliance shall be grounds for an action to recover sums due, for damages or injunctive relief, or for any other remedy available at law or in equity, maintainable by the association or, in any proper case, by one or more aggrieved unit owners, on their own behalf or as a class action. If and to the extent provided in the condominium instruments, the association shall be empowered to impose and assess fines, and suspend temporarily voting rights and the right of use of certain of the common elements in order to enforce such compliance; provided, however, that no such suspension shall deny any unit owner or occupants access to the unit owned or occupied nor cause any hazardous or unsanitary condition to exist. If the voting right of a unit owner has been suspended, then to the extent provided in the condominium instruments, that unit owner's vote shall not count for purposes of establishing a quorum or taking any action which requires a vote of the owners under this article or the condominium instruments. Notwithstanding any other provision of this Code section, to the extent provided in the condominium instruments, water, gas, electricity, heat, and air conditioning services being provided to a unit or unit owner by the association may be terminated for failure to pay assessments and other amounts due pursuant to subsection (a) of Code Section 44-3-109, subject to the suspension standards and notice requirements imposed on the institutional providers providing such services to the condominium development, only after a final judgment or final judgments in excess of a total of $750.00 are obtained in favor of the association from a court of competent jurisdiction. The utility services shall not be required to be restored until the judgment or judgments and any reasonable utility provider charges or other reasonable costs incurred in suspending and restoring such services are paid in full. All common expenses for termination and restoration of any services pursuant to this Code section shall be an assessment and a lien against the unit.

Laws 1975, p. 609, § 13; Laws 1982, p. 3, § 44; Laws 1990, p. 227, § 2; Laws 1994, p. 1943, § 2; Laws 2004, Act 535, § 1, eff. July 1, 2004.

HISTORICAL AND STATUTORY NOTES

The 2004 amendment by Act 535 added "and any reasonable utility provider charges or other reasonable costs incurred in suspending and restoring such services" in the second to the last sentence and added "and restoration" in the last sentence.

CROSS REFERENCES

   Actions for injunctive relief, see § 9-5-1 et seq.

LIBRARY REFERENCES

Condominium ⊙6 to 13, 17.
Westlaw Key Number Searches: 89Ak6 to 89Ak13; 89Ak17.
C.J.S. Estates §§ 199 to 200, 202, 211 to 231, 235 to 242.



PLAINTIFF'S
EXHIBIT
4

| A. Settlement Statement |  U.S. Department of Housing and Urban Development |  OMB No. 2502-0265 |  |
|---|---|---|---|

**B. Type of Loan**

| 1.☐ FHA   2.☐ FmHA   3.☐ Conv. Unins. | 6. File Number | 7. Loan Number | 8. Mortgage Insurance Case Number |
|---|---|---|---|
| 4.☐ VA   5.☐ Conv. Ins. | 42585 | 2641461 | 105-1185830-734 |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for information purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| Teela Spiller<br>821 Ralph McGill Blvd, Unit #3207<br>Atlanta, Georgia 30306 | Freedom Parkway Apartments, L.L.C.<br>5555 Glenridge Connector, Suite 700<br>Atlanta, Georgia 30342 | Sun America Mortgage Corporation<br>5775-C Glenridge Drive, Suite 200<br>Atlanta, Georgia 30328 |

| G. Property Location | H. Settlement Agent | |
|---|---|---|
| 821 Ralph McGill Blvd, Unit #3207<br>Atlanta, Georgia 30306<br>Fulton County<br>Land Lots 15 & 16, 14th District | Morris, Manning, & Martin, LLP<br>Attorneys at Law | |
| | Place of Settlement | I. Settlement Date |
| | 6775C Peachtree Dunwoody Road<br>Suite 150<br>Atlanta, Georgia 30342 | 04/04/03<br>DD: 04/04/03 |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract sales price | 182,062.00 | 401. Contract sales price | 182,062.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 281.25 | 403. | |
| 104. HOA($ 239 per month) | 207.13 | 404. HOA($ 239 per month) | 207.13 |
| 105. Capital contribution | 478.00 | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes            to | | 406. City/town taxes            to | |
| 107. County taxes               to | | 407. County taxes               to | |
| 108. Assessments                to | | 408. Assessments                to | |
| 109. Insurance | 371.85 | 409. Insurance | 371.85 |
| 110. RUM/JAX/ATL | 315.00 | 410. | |
| 111. Merchants Association | 102.00 | 411. | |
| 112. Processing Fee to Nehemiah | 600.00 | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 184,297.23 | **420. GROSS AMOUNT DUE TO SELLER** | 182,640.98 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT TO SELLER** | |
| 201. Deposit or earnest money | 9,000.00 | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 178,600.00 | 502. Settlement charges to seller (line 1400) | 21,828.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loans taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | 146,421.91 |
| | | Wachovia Bank | |
| 205. Nehemiah Gift Funds | 5,461.85 | 505. Payoff of second mortgage loan | |
| 206. | | 506. Wire fee | 25.00 |
| 207. | | 507. Home warranty - 2/10 Home Buyers Warranty | 309.05 |
| 208. | | 508. Processing fee-Realty Development Corp. | 25.00 |
| 209. | | 509. Nehemiah Gift Funds | 5,461.85 |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes    01/01   to   04/04 | 892.33 | 510. City/town taxes    01/01   to   04/04 | 892.33 |
| 211. County taxes       01/01   to   04/04 | 309.04 | 511. County taxes       01/01   to   04/04 | 309.04 |
| 212. Assessments              to | | 512. Assessments              to | |
| 213. | | 513. Gift Funds Wire Fee | 25.00 |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY / FOR BORROWER** | 183,963.23 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 174,797.18 |
| **300. CASH AT SETTLEMENT FROM OR TO BORROWER** | | **600. CASH AT SETTLEMENT TO OR FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | 184,297.23 | 601. Gross amount due to seller (line 420) | 182,640.98 |
| 302. Less amounts paid by/for borrower (line 220) | 183,963.23 | 602. Less reduction amount due to seller (line 520) | 174,797.18 |
| **303. CASH        FROM   BORROWER** | 334.00 | **603. CASH         TO         SELLER** | 7,843.70 |

**PLAINTIFF'S EXHIBIT 5**

File Number: 42585

**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
SETTLEMENT STATEMENT
PAGE 2

| L. SETTLEMENT CHARGES: | | | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $ | 176,500.00 @ | 6.50 = | 11,479.00 | | |
| Division of commission (line 700) as follows: | | | | | |
| 701. $ | 5,298.00 | to | Coldwell Banker The Condo Store | | |
| 702. $ | 6,181.00 | to | Movetoday LLC | | |
| 703. Commission paid at Settlement | | | | | 11,479.00 |
| 704. Agent Bonus | | Movetoday LLC | | | 5,000.00 |
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN. | | | P.O.C. | | |
| 801. Loan Origination Fee | % | | | 1,382.25 | |
| 802. Loan Discount | % | | | | |
| 803. Appraisal Fee | | to | Sun America Mortgage Corporation | 275.00 | |
| 804. Credit Report | | to | Sun America Mortgage Corporation | 57.00 | |
| 805. Lender's Inspection Fee | | to | Sun America Mortgage Corporation | 75.00 | |
| 806. Mtg. Ins. Application Fee | | to | | | |
| 807. Assumption Fee | | to | | | |
| 808. Underwriting Fee | | | Sun America Mortgage Corporation | 325.00 | |
| 809. Tax Service Fee | | | Sun America Mortgage Corporation | 72.00 | |
| 810. Ga. Res. Mtg. Fee | | | Sun America Mortgage Corporation | 8.50 | |
| 811. Flood Certification Fee | | | Sun America Mortgage Corporation | 15.00 | |
| 812. Doc Prep | | | Sun America Mortgage Corporation | 225.00 | |
| 813. Buydown Fee | | | Sun America Mortgage Corporation | 4058.24 | |
| 814. Mortgage Insurance | | | Sun America Mortgage Corporation | 73.23 | |
| 815. | | | | | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | | | |
| 901. Interest from | 04/04/03 | to | 04/01/03 @$ | 32.66 /day | -3 day(s) | -97.98 | |
| 902. Mortgage Insurance Premium | | to | | | |
| 903. Hazard Insurance Premium | | yrs. to | Master Condo Policy | | |
| 904. | | | | | |
| 905. | | | | | |
| 1000. RESERVES DEPOSITED WITH LENDER FOR | | | | | |
| 1001. Hazard Insurance | | mo. @$ | /mo. | | |
| 1002. Mortgage Insurance | 6 | mo. @$ | 73.23 | /mo. | | |
| 1003. City property taxes | 13 | mo. @$ | 75.00 | /mo. | 975.00 | |
| 1004. County property taxes | 11 | mo. @$ | 50.00 | /mo. | 550.00 | |
| 1005. Annual Assessments | | mo. @$ | /mo. | | |
| 1006. | | mo. @$ | /mo. | | |
| 1007. | | mo. @$ | /mo. | | |
| 1008. Aggregate Credit for Hazard/Flood Ins, City/County Prop Taxes, Mortgage Ins & Annual Assessments | | | | | -825.00 | |
| 1100. TITLE CHARGES | | | | | |
| 1101. Settlement or closing fee | | to | | | |
| 1102. Abstract or title search | | to | | | |
| 1103. Title examination | | to | Charles Formaro/ABM | | 61.00 |
| 1104. Title insurance binder | | to | Charles Formaro/ABM | | 50.00 |
| 1105. Document preparation | | to | | | |
| 1106. Notary fees | | to | | | |
| 1107. Attorney's fees | | to | Monte, Manning, & Martin, LLP | | 611.75 |
| (includes above item No: | | | ) | | |
| 1108. Title Insurance | | to | Stewart Title & Guaranty | 300.40 | 295.00 |
| (includes above item Nos: 1105, 1106 Agency Fee to Dogwood Title & Abstr. Co | | | ) | | |
| 1109. Lender's coverage | 176,500.00 — 295.60 | | | | |
| 1110. Owner's coverage | 192,002.00 — 300.40 | | | | |
| 1111. (Owner's coverage is optional) $ | | | | | |
| 1112. includes a MMM fee.) | | | | | |
| 1113. | | | | | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | | | | |
| 1201. Recording fees: | Deed $ | 12.00 | ; Mortgage $ | 45.00 | ; Release $ | 50.00 | |
| 1202. City/county/stamps | Deed $ | | ; Mortgage $ | | | |
| 1203. State tax/stamps | Deed $ | 182.10 | ; Mortgage $ | ; $531.00 | | 713.10 |
| 1204. Assignment | | | | 0.63 | 4.17 |
| 1205. | | | | | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | | | | |
| 1301. Survey | | to | | | |
| 1302. Pest Inspection | | to | | | |
| 1303. Special Handling Fee | | | Monte, Manning, & Martin, LLP | | |
| 1304. Post Closing Review Fee | | | Monte, Manning, & Martin, LLP | | |
| 1305. Release Handling Fee | | | Clerk of Superior Court | | 24.00 |
| 1306. | | | | | |
| 1307. | | | | | |
| 1308. | | | | | |
| 1400. TOTAL SETTLEMENT CHARGES (enter on lines 103 and 502, Sections J and K) | | | | 281.25 | 21,528.00 |

## ACKNOWLEDGEMENT AND RECEIPT

| | |
|---|---|
| LENDER: | Sun America Mortgage Corporation |
| SELLER: | Freedom Parkway Apartments, L.L.C. |
| BORROWER: | Tocia Spiller |
| PROPERTY ADDRESS: | 821 Ralph McGill Blvd, Unit #3207 |
| | Atlanta, Georgia 30306 |
| LOAN NO: | 2641461 |

Date:    0-1/04/03
File #:    42585

Borrower (Purchaser) and Seller acknowledge that each has received and approved the entries appearing on the Settlement Statement, consisting of HUD-1 (2 pages) and Truth-in-Lending Statements, and attached hereto, and each acknowledges receipt of a copy of same. Borrower (Purchaser) acknowledges receipt of a copy of Truth-in-Lending Disclosure, if any, prior to consummation of the loan transaction, and Borrower (Purchaser) further acknowledges use of the loan proceeds, in full. Seller warrants the correctness of all pay-off amounts for outstanding liens and encumbrances; if any deficiency occurs, Seller shall promptly remit the same to Settlement Agent. Any courier, delivery, or recording fees shown on HUD-1 may include settlement agent handling fees; excess funds are retained by SETTLEMENT AGENT as closing and operating fees.

If the proration of taxes and assessments was made based on estimated amounts prior to receipt of current actual bills, Borrower (Purchaser) and Seller agree to adjust the prorations shown on the Settlement Statement between themselves when current actual bills are received, and Borrower (Purchaser) agrees to make the necessary contribution to the escrow agent (if any) with Lender so it is correct.

Borrower (Purchaser) and Seller acknowledge that Settlement Agent and Lender make no representations as to the status of any outstanding or past due water, sewerage or other utility bills applicable to the property. The status of such items shall be determined by and are the responsibility of the Borrower (Purchaser) and Seller. Borrower (Purchaser) is responsible for having all utility bills applicable to the property transferred into the Borrower's (Purchaser's) name.

Borrower (Purchaser) and Seller agree that should any inadvertent errors or omissions later be discovered in any documents executed at Settlement they shall promptly execute such corrective documents and remit such sums as may be required to adjust or correct such errors or omissions.

Borrower (Purchaser) hereby acknowledges that a real property tax return and application for homestead exemption is required by law to be filed with the county tax collector of the county in which the property lies, promptly after the first day of January of the year immediately following settlement and that such filings are the sole responsibility of the Borrower (Purchaser).

As a part of the consideration of this sale, the contract between the parties is by reference incorporated and made a part hereof; the terms and conditions contained therein shall survive the closing and shall not merge upon delivery of the Warranty Deed.

BORROWER(S)/PURCHASER(S) AND SELLER(S) ACKNOWLEDGE THAT THEY WERE ADVISED OF THEIR RIGHT TO RECEIVE THE ATTACHED SETTLEMENT STATEMENT ONE BUSINESS DAY PRIOR TO CLOSING-SETTLEMENT AS REQUIRED BY LAW. BORROWER(S)/PURCHASER(S) AND SELLER(S) AND EACH OF THEM WAIVE SAID MINIMUM ONE DAY NOTICE AFTER BEING ADVISED OF THEIR RIGHT.

MONTHLY PAYMENT IS PAYABLE TO:  Sun America Mortgage Corporation

in the following amount:

| | | | |
|---|---|---|---|
| Principal and Interest | 921.23 | 1030.59 | 1,145.42 |
| Taxes | | | |
|    State and County | 50.00 | 50.00 | 50.00 |
|    City | 75.00 | 75.00 | 75.00 |
| Mortgage Insurance | 73.23 | 73.23 | 73.23 |
| Hazard Insurance | | | 0.00 |
| Other: | 1119.46 | 1228.82 | 0.00 |
| TOTAL | | | 1,343.65 |

FIRST PAYMENT DUE:  May 1st, 2003
Freedom Parkway Apartments, L.L.C.

Tocia Spiller

PLAINTIFF'S
EXHIBIT
6

The Settlement Statement and Disclosure (pages 1, 2 and 3) are a complete, true and correct account of funds received and disbursed by us in the closing of the hereinabove described loan.

MORRIS, MANNING & MARTIN, LLP Fulton

By

## CERTIFICATION

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Teela Spiller

Date: April 4, 2003

Freedom Parkway Apartments, L.L.C.

Date: April 4, 2003

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

Morris, Manning & Martin LLP Fulton

Settlement Agent

Date: April 4, 2003

**WARNING:** It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details, see: Title 18 U.S. Code Sections 1001 and 1010.



## IN THE STATE COURT OF FULTON COUNTY
### STATE OF GEORGIA

COPY

FREEDOM LOFTS CONDOMINIUM )
ASSOCIATION, INC., )
)
    Plaintiff, )
)                    CIVIL ACTION
)                    FILE NO. 05VS081258Y
v. )
)
TEELA SPILLER, )
)
    Defendant. )

FILED IN OFFICE, THIS THE
16th DAY OF Dec , 2005
DEPUTY CLERK

## CONSENT ORDER

The Parties having consented hereto, it is hereby ordered and adjudged that Defendant Teela Spiller (hereinafter "Spiller") shall pay to Plaintiff Freedom Lofts Condominium Association, Inc. the sum of Fourteen Thousand Eight Hundred Thirty Three and 37/100 Dollars ($14,833.37), as set forth below:

### 1.

Defendant Spiller shall pay directly to Plaintiff Freedom Lofts Condominium Association, Inc., beginning January 1, 2007, the duly assessed Association fees each month as they come due and any special assessments assessed after and upon the execution of the within Consent Order.

### 2.

Defendant Spiller shall pay principal, interest, attorney's fees and costs in the amount of Fourteen Thousand Eight Hundred Thirty Three and 37/100 Dollars ($14,833.37) owed to Freedom Lofts Condominium Association, Inc. on the property which is subject to the above-referenced lawsuit in accordance with the following schedule: a down payment in the amount of Two Thousand Eight Hundred Sixty Eight and 00/100 Dollars ($2,868.00) on or before

PLAINTIFF'S
EXHIBIT
7

December 9, 2005; payments in the amount of Six Hundred Thirty One and 74/100 Dollars ($631.74) due on or before the last day of each month for eighteen (18) consecutive months, beginning on December 31, 2005; and a final payment of Six Hundred Seven and 37/100 Dollars ($607.37) due or before the last day of the nineteenth (19th) month.

Such payment shall be made payable to Freedom Lofts Condominium Association, Inc. and delivered to Elizabeth A. Frey at Weinstock & Scavo, P.C., 3405 Piedmont Road, N.E., Suite 300, Atlanta, Georgia 30305.  If Defendant defaults upon any of her obligations under this Consent Order as described herein, and if Plaintiff agrees to accept subsequent payments from Defendant, then all such further payments shall be made by certified funds or cash.  If payments are mailed, sufficient time should be allowed for receipt of the payment at the above address by the date specified.

3.

Defendant may prepay any payments described in this Consent Order at any time. Defendant may also make multiple payments at any time.

4.

Upon timely receipt of the payments set forth in Paragraphs 1 and 2 herein, Plaintiff Freedom Lofts Condominium Association, Inc. shall dismiss its Complaint in this action with prejudice.

5.

Upon Plaintiff's receipt of Defendant first payment due on or before December 9, 2005 as described in Paragraph 1 above, Plaintiff shall restore all privileges associated with Defendant's ownership of a condominium unit located within the Freedom Lofts Condominium, including, but not limited to, voting rights.  If Defendant defaults upon any of her obligations under this Consent

Order as described herein, Plaintiff has the authority, pursuant to the Declaration of Condominium for Freedom Lofts Condominium, to divest Defendant of the aforementioned privileges, including, but not limited to, voting rights.

## 6.

In the event that the property at issue in the above-referenced lawsuit is sold before all payments pursuant to this Consent Order have been made, Defendant acknowledges that any outstanding balance will be paid in full on or before the closing date.

## 7.

In the event Defendant fails to pay to Plaintiff when due any one or more of the payments set out in Paragraphs 1 and 2 above, Plaintiff may tender to the Court an affidavit signed by an agent of Plaintiff or Plaintiff's attorney stating that Defendant has defaulted under the terms hereof.  The affidavit shall not be tendered to the Court sooner than ten (10) days after the mailing, by certified mail, of a copy of said affidavit to Defendant. The affidavit shall constitute conclusive evidence of the authority and capacity of the person signing the affidavit to act on behalf of Plaintiff.  Upon receipt of such affidavit, the Court shall immediately enter judgment against Defendant Spiller and in favor of Plaintiff Freedom Lofts Condominium Association, Inc. for all amounts owed by Defendant to Plaintiff through the date of the affidavit, including the amounts set forth in Paragraphs 1 and 2 above, less payments, plus interest accrued from the date of entry of the Consent Order; plus the reasonable attorney's fees actually incurred by Plaintiff in attempting to collect the amounts due pursuant to this Consent Order.  Defendant hereby waives any right to a hearing in the event of his default.  Any acceptance of a late payment under this Consent Order shall not constitute a waiver of by Plaintiff of its right to

WEINSTOCK & SCAVO        Fax:4042311618        Dec  2 2005  12:08    P.07

obtain a judgment as referenced in Paragraph 5 herein.  Plaintiff expressly reserves any rights to

which it is entitled. *The Clerk of Court is Ordered to Close this file instanter.*

This ___12___ day of ___December___, 2005.

_____
JUDGE, STATE COURT OF Fulton COUNTY

**CONSENTED TO BY:**

Tecla Spiller

_____
821 Ralph McGill Boulevard
Unit #3207
Atlanta, Georgia 30306

*Defendant*

Weinstock & Scavo, P.C.

_____
Elizabeth A. Frey
Georgia State Bar No. 276399

*Attorneys for Plaintiff*
3405 Piedmont Road, NE
Suite 300
Atlanta, Georgia 30305
(404) 231-3999